UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KATHRYN MARIE SEIDLER,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>AMAZON,<br><br>　　　　　　　Defendant. | CASE NO. C23-0816JLR<br><br>ORDER |

## I.　INTRODUCTION

Before the court is Defendant Amazon.com Services LLC's ("Amazon"[1]) motion to dismiss *pro se* Plaintiff Kathryn Marie Seidler's complaint. (Mot. (Dkt. # 10); *see also* Compl. (Dkt. # 1).) Ms. Seidler filed no response to the motion. (*See generally* Dkt.); *see* Local Rules W.D. Wash. LCR 7(b)(2) ("Except for motions for summary judgment, if a party fails to file papers in opposition to a motion, such failure may be considered by

---

[1] Amazon.com Services LLC was incorrectly named in this action as "Amazon." (*See* Compl. (Dkt. # 1) at 1; *see also* Mot. (Dkt. # 10) at 1.)

ORDER - 1

1  the court as an admission that the motion has merit."). The court has considered the
2  motion, the relevant portions of the record, and the governing law. Being fully advised,[2]
3  the court GRANTS Amazon's motion to dismiss.

## II.  BACKGROUND[3]

Ms. Seidler is a 53-year-old "German Australian" national, identifies as Catholic, and resides in Seattle, Washington. (*See* Compl. at 6-7; EEOC Compl. (Dkt. # 1-2) at 11-12.) Ms. Seidler worked at Amazon as a Sortation Associate from approximately March 13, 2020 to September 28, 2021. (Compl. at 7; EEOC Compl. at 11, 23.) When she joined Amazon, Ms. Seidler established "long term career and family planning goals" for herself that she apparently intended to accomplish through her employment benefits. (EEOC Compl. at 11.) For example, Ms. Seidler received or expected to receive certain reproductive health benefits as an Amazon employee, including "Progyny." (Compl. at 7.) Related to her family planning efforts, Ms. Seidler alleges she has a frozen embryo in Australia awaiting shipment to the United States. (EEOC Compl. at 11.)

After commencing her role as a Sortation Associate, Ms. Seidler began observing "safety violations" at the warehouse where she worked. (EEOC Compl. at 13.) These included "failure to rotate," "excessive heavy lifting," and excessive heat. (*Id.*) Ms. Seidler also began experiencing "sexual harassment" due to her work activities, which

---

[2] Neither party requests oral argument (*see generally* Mot.; Dkt.) and the court determines that oral argument would not be helpful in resolving the motion, *see* Local Rules W.D. Wash. LCR 7(b)(4).

[3] The court takes the facts from Ms. Seidler's complaint and the documents attached thereto. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (in evaluating a complaint under Rule 12(b)(6), courts may consider documents attached to the complaint).

ORDER - 2

included "frequent bending, stooping, and squatting, almost groveling." (*Id.*)  Ms. Seidler observed that female employees "accepted less overtime" due to these safety and harassment concerns, which resulted in a pay disparity between male and female employees. (*Id.* at 14-15.)  In addition, Ms. Seidler alleges she experienced "a defamatory allegation pertaining to her German ancestry." (EEOC Compl. at 13.)  Ms. Seidler requested to transfer work sites and was denied. (*Id.* at 14.)  Throughout 2021, Ms. Seidler applied to various other positions within Amazon, including "Global Sales Account Representative" and a "Business Intelligence Engineer Apprenticeship." (*Id.* at 10.)  However, Ms. Seidler never advanced in the application or interview process for any of these roles. (*See id.*)  Ms. Seidler abandoned her position at Amazon on or around September 28, 2021. (*Id.* at 23.)

     Ms. Seidler filed a charge with the Equal Employment Opportunity Commission ("EEOC") on February 27, 2023. (Compl. at 8.)  The EEOC dismissed the charge the same day it was filed and informed Ms. Seidler of her right to sue. (EEOC Letter (Dkt. # 1-3) at 1.)  Ms. Seidler then filed this action against Amazon on May 30, 2023, alleging employment discrimination and retaliation. (*See generally* Compl.)  Ms. Seidler claims Amazon discriminated against her on the basis of sex, "pregnancy" and "potential pregnancy," age, national origin, and religion. (*Id.* at 4.)  She also alleges Amazon unlawfully blocked her progression into more advanced roles within the company and denied her transfer request. (*See id.* at 5; EEOC Compl. at 10, 22.)  Ms. Seidler brings her claims under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act of 1990 ("ADA"), and the Age Discrimination in Employment Act of

1967 ("ADEA"). (Compl. at 3-4.) Ms. Seidler also raises "habe[a]s corpus issues" in light of the United States Supreme Court's decision overturning *Roe v. Wade*.[4] (Compl. at 4; EEOC Compl. at 8.) In particular, Ms. Seidler claims the law arguably recognizes fetuses as living persons and that Amazon has unlawfully failed to deliver her frozen embryo from Australia to the United States. (*Id.* at 5-6, 9; EEOC Compl. at 8, 11-12.)

Amazon filed the instant motion to dismiss on September 13, 2023. (*See generally* Mot.) Ms. Seidler filed no response to the motion, though she did file an Amended Complaint on October 6, 2023. (*See generally* Dkt.; Am. Compl. (Dkt. # 11).) Amazon moved to strike the Amended Complaint for failure to follow the requirements of Federal Rule of Civil Procedure 15, and the court granted that motion. (Mot. to Strike (Dkt. # 12); 10/11/23 Order (Dkt. # 13).) The operative pleading for purposes of Amazon's motion to dismiss therefore remains Ms. Seidler's first complaint. (*See generally* Compl.)

### III.   ANALYSIS

The court sets forth the legal standard governing dismissal before turning to Amazon's motion to dismiss.

**A.   Standard of Review**

Because Ms. Seidler is a *pro se* Plaintiff, the court must construe her pleadings liberally. *See McGuckin v. Smith*, 974 F.2d 1050, 1055 (9th Cir. 1992). Federal Rule of Civil Procedure 12(b)(6) provides for dismissal when a complaint "fail[s] to state a claim

---

[4] 410 U.S. 113 (1973), *overruled by Dobbs v. Jackson Women's Health Org.*, 597 U.S. __, 142 S. Ct. 2228 (2022).

1  upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); *see also* Fed. R. Civ. P.

2  8(a)(2) (requiring the plaintiff to provide "a short and plain statement of the claiming

3  showing that the pleader is entitled to relief").  Under this standard, the court construes

4  the allegations in the light most favorable to the nonmoving party, *Livid Holdings Ltd. v.*

5  *Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005), and asks whether the

6  claim contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is

7  plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

8  *Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The court need not accept as true legal

9  conclusions, "formulaic recitation[s] of the legal elements of a cause of action," *Chavez*

10 *v. United States*, 683 F.3d 1102, 1008 (9th Cir. 2012), or "allegations that are merely

11 conclusory, unwarranted deductions of fact, or unreasonable inferences," *Sprewell v.*

12 *Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  "A claim has facial

13 plausibility when the plaintiff pleads factual content that allows the court to draw the

14 reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556

15 U.S. at 678.  Although the pleading standard announced by Federal Rule of Civil

16 Procedure 8 does not require "detailed factual allegations," it demands more than "an

17 unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678

18 (citing *Twombly*, 550 U.S. at 555); *see also* Fed. R. Civ. P. 8(a).

19 **B.**     **Motion to Dismiss**

20         Construing the complaint liberally, the court determines that Ms. Seidler raises the

21 following claims:  (1) discrimination on the basis of sex (including pregnancy), national

22 origin, and religion under Title VII; (2) disability discrimination under the ADA; (3) age

discrimination under the ADEA; (4) retaliation under Title VII; and (4) habeas corpus. Amazon argues Ms. Seidler's discrimination and retaliation claims should be dismissed with prejudice because Ms. Seidler failed to timely file a charge with the EEOC before initiating this lawsuit, and because her factual allegations do not state a plausible claim for relief. (Mot. at 3-6.) Amazon further argues that habeas corpus is not a cognizable legal theory under the circumstances. (*Id.* at 6.) The court examines these arguments in turn.

1. Discrimination and Retaliation Under Title VII, the ADA, and the ADEA

Because a timely EEOC charge is a prerequisite to filing suit under Title VII, the ADA, and the ADEA, the court first addresses the timeliness of Ms. Seidler's EEOC charge before turning to the specific factual allegations supporting her claims.

a. EEOC Charge

In order to bring claims alleging employment discrimination under Title VII, the ADA, and the ADEA, a plaintiff must first timely file a charge with the EEOC. 42 U.S.C. § 200e-5(e)(2) (Title VII); 42 U.S.C. § 12117 (the ADA, incorporating the enforcement procedures set forth at 42 U.S.C. § 2000e-5); 29 U.S.C. § 626(d)(1) (the ADEA); *see also, e.g.*, *MacDonald v. Grace Church Seattle*, 457 F.3d 1079, 1088 (9th Cir. 2006) (affirming dismissal of Title VII claims where the plaintiff failed to timely file an EEOC charge). Although the statutory deadline varies depending on the specific procedure in place, the deadline does not exceed 300 days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(1)(B). However, the filing requirement "is subject to waiver, estoppel, and equitable tolling."

*Johnson v. Lucent Techs. Inc.*, 653 F.3d 1000, 1009 (9th Cir. 2011) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)); *see also, e.g., id.* (explaining that the doctrine of equitable estoppel "'focuses primarily on the actions taken by the defendant in preventing a plaintiff from filing suit.'" (quoting *Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002))); *Green v. L.A. Cnty. Superintendent of Sch.*, 883 F.2d 1472, 1480 (9th Cir. 1989) (holding EEOC charge was timely filed based on local agency's waiver of jurisdiction); *Forester v. Chertoff*, 500 F.3d 920, 930 (9th Cir. 2007) ("Equitable tolling is appropriate where there is 'excusable ignorance of the limitations period and [a] lack of prejudice to the defendant,'" or where "'the danger of prejudice to the defendant is absent, and the interests of justice [require relief].'" (quoting *Naton v. Bank of Cal.*, 649 F.2d 691, 696 (9th Cir. 1981), and *Azer v. Connell*, 306 F.3d 930, 936 (9th Cir. 2002))).

Here, Ms. Seidler's employment ended in September 2021, but she did not file a charge with the EEOC until February 27, 2023. (Compl. at 8.). Even assuming a 300-day deadline applies, Ms. Seidler's window to file an EEOC charge passed in approximately July 2022. *See* 42 U.S.C. § 2000e-5(e)(1); 42 U.S.C. § 12117; 29 U.S.C. § 626(d)(1). Ms. Seidler alleges no facts suggesting that equitable doctrines such as waiver, estoppel, or tolling render her EEOC charge timely. (*See generally* Compl.; EEOC Compl.); *Johnson*, 653 F.3d at 10091. It therefore appears that Ms. Seidler's EEOC charge was untimely, which is fatal to her claims. Because Ms. Seidler failed to timely file a charge with the EEOC, her discrimination and retaliation claims under Title VII, the ADA, and the ADEA are DISMISSED without prejudice and with leave to amend. If Ms. Seidler wishes to continue pursuing these claims, she must file an

amended complaint setting forth factual allegations that establish her EEOC charge was rendered timely via waiver, estoppel, or tolling.

          b. *Facial Plausibility: Discrimination*

As noted, Ms. Seidler may cure the EEOC-related deficiency identified above by filing an amended complaint that provides additional facts establishing that her charge was timely based on equitable principles. Accordingly, the court must also address whether the factual allegations supporting Ms. Seidler's discrimination and retaliation claims under Title VII, the ADA, and the ADEA are sufficiently plausible to survive dismissal. The court concludes that these claims are factually deficient but may be cured upon filing an amended complaint.

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to . . . compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); *see also Int'l Union v. Johnson Controls, Inc.*, 499 U.S. 187, 206 (1991) (explaining that, pursuant to the Pregnancy Discrimination Act, sex discrimination under Title VII encompasses discrimination based on pregnancy and the capacity to become pregnant). The ADA prohibits an employer from discriminating "against a qualified individual with a disability because of the disability." 42 U.S.C. § 12112(a). The ADEA prohibits an employer from, among other things, failing or refusing to hire an individual "because of" that individual's age. 29 U.S.C. § 623(a)(1), 631(a). In each context, a plaintiff may bring an action against an employer under the theories of disparate treatment and

disparate impact. *Fragante v. City & Cnty. of Honolulu*, 888 F.2d 591, 594 (9th Cir. 1989) (Title VII); *Raytheon Co. v. Hernandez*, 540 U.S. 44, 53 (2003) (ADA); *Smith v. City of Jackson*, 544 U.S. 228, 231-32 (2005) (ADEA); *see also Raytheon Co.*, 540 U.S. at 52-53 (explaining that disparate treatment concerns the employer's subjective intent to discriminate whereas disparate impact concerns facially neutral employment practices that disproportionately harm a certain class of persons).

To establish a prima facie case of disparate treatment under Title VII, a plaintiff must show that: (1) she is a member of a protected class; (2) she performed according to her employer's expectations; (3) she suffered an adverse employment action; and (4) similarly situated individuals outside her protected class were treated more favorably. *Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115, 1123 (9th Cir. 2000). To establish a prima facie case of disparate treatment under the ADA, a plaintiff must show that she (1) has a disability within the meaning of the ADA; (2) she was qualified for the position; and (3) suffered an adverse employment action because of her disability. *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1087 (9th Cir. 2001). The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities" of the individual. 42 U.S.C. § 12102. And "[i]n the ADEA context, the following factors give rise to a prima facie showing of age discrimination: (1) membership in a protected class (forty years or older); (2) satisfactory job performance; (3) discharge; and (4) replacement by 'substantially younger employees with equal or inferior qualifications.'" *Opara v. Yellen*, 57 F.4th 709, 722 (9th Cir. 2023) (quoting *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000)). However,

"a plaintiff is not required to plead a prima facie case of discrimination or retaliation in order to survive a motion to dismiss." *Cloud v. Brennan*, 436 F. Supp. 3d 1290, 1300 (N.D. Cal. 2020). "Instead, courts look to the elements of the prima facie case 'to decide, in light of judicial experience and common sense, whether the challenged complaint contains sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.'" *Id.* at 1304 (quoting *Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 796-97 (N.D. Cal. 2015)).

Ms. Seidler's complaint appears to raise two types of discrimination claims under a disparate treatment theory: (1) failure to hire on the basis of sex, national origin, religion, and disability under Title VII, the ADA, and the ADEA (*see* Compl. at 4-5 (discussing lack of career advancement); EEOC Compl. at 10 (listing jobs to which Ms. Seidler unsuccessfully applied)); and (2) sex discrimination under Title VII arising from unequal terms and conditions of employment (*see* Compl. at 4-5 (describing unequal pay and distribution of work tasks between male and female employees); EEOC Compl. at 14-15 (same)). These allegations, however, are insufficient to state a plausible claim for relief under Title VII, the ADA, or the ADEA. While Ms. Seidler is not required to provide "detailed factual allegations," she must offer more than "an unadorned, the-defendant-unlawfully harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555); *see also* Fed. R. Civ. P. 8(a). The allegations in the complaint are largely conclusory and fail to provide fair notice of the factual basis supporting Ms. Seidler's claims. For example, with respect to her failure-to-hire claims, Ms. Seidler provides no explanation that she performed her job to Amazon's expectations, that she

was qualified for the roles to which she applied, or that similarly situated individuals outside of her class—be it her religion, age group, nationality, or status as a pregnant or soon-to-be pregnant person—were treated more favorably. *Chuang*, 225 F.3d at 1123; *Opara*, 57 F.4th at 722.

With specific regard to the ADA, Ms. Seidler fails to identify her disability, if any. *Snead*, 237 F.3d at 1087; (*see generally* Compl.) The complaint does not allege that Ms. Seidler was pregnant during her employment at Amazon; at most, it appears Ms. Seidler intended to become pregnant, but the ADA does not protect against discrimination based on the mere possibility of becoming pregnant. *See Coates v. Washoe Cnty. Sch. Dist.*, No. 3:20-cv-00182-LRH-CLB, 2020 WL 718746, at *5 (E.D. Nev. Dec. 4, 2020) (citing *Hogan v. Ogden*, No. CV-06-5078-EFS, 2008 WL 2954245, at *4-5 (E.D. Wash. July 30, 2008)) (explaining that pregnancy and pregnancy-related complications qualify as disabilities under the ADA only in very limited and fact-dependent circumstances). Ms. Seidler also references a work-related injury (*see* Compl. at 4), but the complaint fails to identify the injury or explain how this condition affects a major life activity so as to constitute a "disability" under the ADA. 42 U.S.C. § 12102.

Although Ms. Seidler attached several lengthy documents to her complaint that appear to relate to her EEOC charge (*see, e.g.*, EEOC Compl.), Ms. Seidler does not explain what these documents are and instead appears to rely on the court to sort through her complaint and attached documents to try to identify the relevant facts. Although a *pro se* litigant like Ms. Seidler is entitled to leeway when the court construes her pleadings, *Brazil v. U.S. Dep't of Navy*, 66 F.3d 193, 199 (9th Cir. 1995), it is not the

court's duty to sort through Ms. Seidler's complaint and documents in order to piece together the basis of her claims. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (reciting the "now familiar maxim, '[j]udges are not like pigs, hunting for truffles buried in briefs.'" (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991))).

In sum, the factual allegations supporting Ms. Seidler discrimination claims under Title VII, the ADA, and the ADEA fall short of minimum pleading requirements.[5] Should Ms. Seidler wish to continue pursuing her various discrimination claims, she must file an amended complaint that not only shows her EEOC charge was rendered timely based on equitable principles, but that also sets forth specific factual content permitting the court to draw a reasonable inference that Amazon is liable for the discrimination alleged. *See Iqbal*, 556 U.S. at 678.

---

[5] To the extent Ms. Seidler's complaint could be construed to raise hostile work environment claims under Title VII based on national origin or sexual harassment, those claims similarly fail to meet minimum pleading requirements. To allege a prima facie claim for hostile work environment based on harassment or national origin, the employee must show: (1) that she was subjected to verbal or physical conduct (a) of a harassing nature, or (b) because of her national origin; (2) that this conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. *See Kortan v. Cal. Youth. Auth.*, 217 F.3d 1104, 1109-10 (9th Cir. 2000) (harassment); *Kang v. U. Lim Am., Inc.*, 296 F.3d 810, 817 (9th Cir. 2002) (national origin). Ms. Seidler has offered only bare allegations that she was "sexually harass[ed]" and subjected to a "defamatory allegation" about her German ancestry. (*See* EEOC Compl. at 13-14.) She has offered almost no facts describing the alleged harassment, the defamatory allegation, or the severity and pervasiveness of the same. (*See id.* (vaguely describing instances of "stalking," "intimidation," and a "Nazi" allegation that Ms. Seidler calls a "red herring").) The court cannot discern the factual basis supporting any hostile work environment claim.

           *c.   Facial Plausibility:  Retaliation*

Ms. Seidler next raises a retaliation claim under Title VII.  (Compl. at 5-6.)  Title VII makes it unlawful "for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this chapter."  42 U.S.C. § 2000e-3(a).  "Among other things, [the Act] prohibits employers from retaliating against employees who 'oppose' discriminatory employment practices."  *EEOC v. Dinuba Med. Clinic*, 222 F.3d 580, 586 (9th Cir. 2000).  To establish a prima facie case of retaliation, an aggrieved employee must show that:  (1) she has engaged in statutorily protected expression; (2) she has suffered an adverse employment action; and (3) there is a causal link between the protected expression and the adverse action.  *Id.*  "To establish a causal connection between her protected activity and the adverse actions, a plaintiff may allege direct or circumstantial evidence from which causation can be inferred," including "an employer's 'pattern of antagonism following the protected conduct,'" or "the temporal proximity of the protected activity and the occurrence of the adverse action."  *Id.* at 1301 (quoting *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 895 (9th Cir. 2005)).

Although her allegations are difficult to discern, Ms. Seidler appears to allege that Amazon engaged in retaliation by denying her transfer request in response to complaints she made about work conditions in the warehouse.  (*See* EEOC Compl. at 15, 22.)  However, Ms. Seidler offers only bare allegations of retaliation and very little factual detail concerning the subject matter, timing, and general circumstances of her complaints and transfer request.  (*See, e.g.*, Compl. at 5 (stating only that "[w]hen complaints were

made, retaliation ensued including repeating issues the source of complaint and or maintaining the acts, omissions and practices complained of"). As pleaded, the complaint fails to state a plausible claim for retaliation because it is not clear whether Ms. Seidler engaged in a protected activity, nor whether any such activity is causally linked to an adverse employment action. *Dinuba Med. Clinic*, 222 F.3d at 586. Should Ms. Seidler wish to continue pursuing her retaliation claim under Title VII, she must file an amended complaint she must file an amended complaint that not only shows her EEOC charge was rendered timely based on equitable principles, but that also sets forth specific factual content permitting the court to draw a reasonable inference that Amazon is liable for the retaliation alleged. *See Iqbal*, 556 U.S. at 678.

2. Habeas Corpus

Ms. Seidler's complaint appears to seek a writ of habeas corpus directing Amazon to deliver Ms. Seidler's frozen embryo from Australia to the United States. (*See* Compl. at 4-6.) Amazon argues dismissal is warranted because habeas corpus "is not a cognizable claim against an employer." (Mot. at 6.) The court agrees. The court's authority to issue writs of habeas corpus extends to cases involving the unlawful detention of persons in government custody. *See* 28 U.S.C. § 2241, 2255 (authorizing federal courts to grant the writ); *see also Walker v. Wainwright*, 390 U.S. 335, 336 (1968) ("[T]he great and central office of the writ of habeas corpus is to test the legality of a prisoner's current detention."). Because the habeas statutes plainly do not apply to this private employment dispute, this claim is DISMISSED with prejudice.

### C. Leave to Amend

A district court should not dismiss a *pro se* complaint "without leave to amend 'unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting *Schucker v. Rockwood*, 846 F.2d 1202, 1203-04 (9th Cir. 1988) (per curiam)). Although Ms. Seidler has failed to plausibly plead her claims, the court cannot conclude that "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Id.* at 1212. Thus, the court GRANTS Ms. Seidler leave to file an amended complaint that cures the deficiencies with respect to her discrimination and retaliation claims under Title VII, the ADA, and the ADEA. If she does so, Ms. Seidler must forth factual allegations establishing that equitable principles render her EEOC charge timely in addition to allegations establishing her right to relief under Title VII, the ADA, and the ADEA. Ms. Seidler shall file her amended complaint, if any, no later than **November 3, 2023**. If Ms. Seidler fails to timely comply with this order or fails to file an amended complaint that remedies the deficiencies discussed in this order, the court will dismiss her proposed complaint without leave to amend and close this case.

### IV. CONCLUSION

For the foregoing reasons, the court GRANTS Amazon's motion to dismiss (Dkt. # 10).

Dated this 19th day of October.

JAMES L. ROBART
United States District Judge

ORDER - 15